2007 ME 110

**STATE of Maine**

v.

**Winslow R. NEWBERT Jr.**

Supreme Judicial Court of Maine.

Submitted on Briefs: May 17, 2007.
Decided: Aug. 14, 2007.

770

R. Christopher Almy, District Attorney,
C. Daniel Wood, Asst. Dist. Attorney, Bangor, for State.

Randy G. Day, Garland, for defendant.

Panel: SAUFLEY, C.J., and CALKINS, LEVY, SILVER, and MEAD, JJ.

SAUFLEY, C.J.

[¶ 1] Winslow R. Newbert Jr. appeals from the judgment and conviction on five charges related to theft and nonappearance entered against him in the District Court (Dover–Foxcroft, *Stitham, J.*) on September 19, 2005. The judgments were entered following Newbert's pleas of guilty to each charge. Sentencing on the charges was continued numerous times to allow the sentences to be coordinated with his anticipated sentencing on several pending federal charges. When the sentencing on the federal charges did not occur within a reasonable time, the District Court declined to allow any further continuances. Newbert argues that the court, in effect, rejected the terms of the plea agreement when it refused to grant a continuance to allow the sentencing on his state charges to be entered concurrent with, or after, a pending federal sentence, and therefore the court erred in refusing to either continue the sentencing hearing or allow him to withdraw his guilty plea. *See* M.R.Crim. P. 11A. We affirm the judgment and the sentence.

## I. BACKGROUND

[¶ 2] On November 24, 2004, Newbert was charged with forgery (Class D), 17–A M.R.S. § 703(1)(A) (2006); theft by unauthorized taking or transfer (Class E), 17–A M.R.S. § 353(1)(A) (2006); and two counts of negotiating a worthless instrument (Class E), 17–A M.R.S. § 708(1)(A) (2006). When he failed to appear for trial on those matters, he was charged with one count of failure to appear (Class E), 15 M.R.S. § 1091(1)(A) (2006).

[¶ 3] At a hearing held on September 19, 2005, almost a year after the first charges were filed, Newbert pleaded guilty to all five counts, with the agreement of the prosecutor that there would be a sixty-day cap on imprisonment and that restitution could be imposed. The court accepted the guilty plea, and at the request of the parties, continued the case to October 24 for sentencing. The basis for the continuance was discussed at a bench conference, the transcript of which has not been included with this appeal. At the October 24 sentencing hearing, the court again continued the case for sentencing at Newbert's request. The record reflects that Newbert requested the continuance because the plea agreement between Newbert and the State included a condition that his sentence would run concurrently to a federal matter where sentencing had not yet occurred.[1]

[¶ 4] Another sentencing hearing was held on December 5, and the parties at that point made clear on the record the nature of the plea agreement: the plea agreement was for a sixty-day cap on imprisonment, plus restitution of $687.24, with a condition that all the sentences would run concurrently to each other and to the pending federal sentence. Newbert was being represented by a different attorney in the federal matter. The court expressed concern about granting another continuance because Newbert had arrived several hours late for the hearing despite being released on $1600 bail. At this point, Newbert articulated for the first time on the record that the purpose of having the state and federal sentences run concurrently was to prevent his state sen-

1. Newbert was charged on July 12, 2005, with possession with the intent to distribute cocaine in the United States District Court for the District of Maine. *United States v. Newbert,* 471 F.Supp.2d 182, 184 (D.Me.2007).

tence from elongating his federal sentence. Accordingly, Newbert argued that his plea agreement could not take effect until after he had been sentenced in federal court, although the State disagreed with this proposition. The court presented its understanding of the agreement: that if Newbert's sentence in the federal case exceeded sixty days, his state sentence was required to run concurrently and not result in Newbert spending additional time in prison.

[¶ 5] To determine the status of Newbert's federal case, the court placed a conference call to Newbert's attorney in the federal matter. This attorney anticipated that Newbert would enter a plea sometime between January and March of 2006, with sentencing likely to occur by May. Because the court believed that it could not sentence Newbert concurrently to a nonexistent federal sentence,[2] and because the court intended to effectuate the intent of the parties in the plea agreement, it continued sentencing to May 15, 2006.

[¶ 6] At the May 15 hearing, Newbert sought to withdraw his plea and the State objected due to the length of time that had elapsed since the entry of the plea agreement. Newbert had still not been sentenced in the federal court, and a new attorney now represented him in that case. The attorney on the federal matters appeared at the May 15 hearing and told the court that jury selection for a federal trial was to occur on June 12. Newbert then asked to have sentencing continued until the federal matter was completed. The State suggested that because Newbert was currently in custody, he could simply serve his sentence.[3] The court agreed to continue the sentencing hearing to June 19, by which time the federal matter was expected to be completed.

[¶ 7] Pursuant to the discussions on May 15, Newbert filed a motion to revoke his bail and remain in custody, which the court granted. Another sentencing hearing occurred on June 19, where the court granted a continuance to July 31. The July 31 hearing was again continued to September 18.[4]

[¶ 8] On September 18, 2006, a final sentencing hearing occurred. By that point, more than two years had passed since the date of the alleged criminal activity, twenty-two months had passed since the charges were filed, and a full year had passed since the entry of Newbert's original guilty pleas. The matter had come before the District Court on no fewer than *six separate occasions* for entry of the agreed upon sentence. By the time of this hearing, however, a sentence in the federal case had still not been entered, and Newbert indicated that he was seeking to withdraw his guilty plea in the federal matter.[5] Newbert estimated that if his motion to

---

2. The court may order that a term of imprisonment run concurrently to a previously existing sentence in another jurisdiction. *See* 17–A M.R.S. § 1256(7) (2006). Absent such an order, however, the term of imprisonment must run consecutively to the other sentence. *Id.*

3. The record suggests that Newbert was in custody because his preconviction bail in the federal matter had been revoked.

4. The events of the June 19 and July 31 hearings are not in the record.

5. Newbert pleaded guilty to the federal charge on June 7, 2006, and then moved to withdraw his plea on July 31, prior to the September 18 hearing in the State District Court. *Newbert,* 471 F.Supp.2d at 184. The federal court granted his motion to withdraw his plea on January 17, 2007. *Id.* at 199. The court denied the government's motion for reconsideration. *Id.* at 202–03. Newbert's trial was still pending as of March 2, 2007. *See United States v. Newbert,* 477 F.Supp.2d 287, 287–88 (D.Me.2007).

withdraw the plea were granted in his federal case, he would go back on the federal trial list, and if not, he would likely be sentenced within six to eight weeks.

[¶ 9] Opposed to delaying Newbert's sentencing any longer, the State asked the court to sentence Newbert to time served instead of granting a continuance. Newbert, however, asked to withdraw his guilty plea and asserted his innocence to the charges, although he conceded that only his assertion of innocence weighed in his favor for a withdrawal. Newbert further asked that, if the court did not allow him to withdraw his plea, the sentencing be continued until after the federal sentence was imposed. The State argued that a withdrawal of Newbert's plea would significantly prejudice its case against him.

[¶ 10] The court determined that this hearing was the first occasion where Newbert had asserted his innocence and that withdrawal of his guilty plea would severely prejudice the State. Therefore, the court denied Newbert's motion to withdraw his plea.

[¶ 11] The court then considered whether to continue the sentencing hearing. After consulting with counsel, the court determined that a sentence of time served would end the matter because the plea agreement included a sixty-day cap on Newbert's sentence and he had already spent eighty-one days in jail on these charges. Newbert's understanding from discussions with his federal attorney was that his convictions and a sentence of sixty days or greater would each count as points negatively impacting his federal sentence.[6] Newbert told the court, however, that a recorded sentence of fifty-nine days, as opposed to sixty days, would not prejudice him in his federal case. The State added

only that it was seeking restitution, which Newbert had agreed to when he entered his plea. The court declined to continue the hearing and sentenced Newbert to five concurrent fifty-nine-day sentences, with credit for time served. The court declined to order restitution. The court concluded that Newbert's sentence would not prejudice him in his federal case, which had been the concern of the parties when they entered into the plea agreement. This appeal followed.

## II. DISCUSSION

[¶ 12] Newbert argues that the court, by sentencing him before he received his sentence in the federal matter, rejected an important aspect of the plea agreement: that the state sentence run concurrently with the federal sentence. Newbert argues that M.R.Crim. P. 11A requires that he either be allowed to withdraw his plea or have the matter continued to give effect to the agreement.

[¶ 13] The State argues that the court did not reject the plea agreement and it gave Newbert exactly what he had bargained for: a state sentence of less than sixty days that would result in no more jail time than what he would receive in federal court. The State contends that Newbert's fifty-nine-day sentence to time served did not increase his jail time beyond his federal sentence or serve to enhance his potential federal sentence, which were Newbert's two concerns with the plea agreement. It further argues that, because the purpose of the plea agreement was given effect, Rule 11A did not require that Newbert be allowed to either continue the sentencing hearing or withdraw his plea, and that the court did not abuse its

---

6. Newbert indicated that he was facing as many as twenty-one years in prison in his federal case.

discretion by refusing to allow Newbert to withdraw his plea.

[¶ 14] Plea agreements in the District Court are governed by M.R.Crim. P. 11A, which allows various plea agreement options and includes the caveat that

[t]he court shall not reject the recommendation without giving the defendant the opportunity to withdraw his plea, as provided in subdivision (e).

. . . .

(e) **Withdrawal of Plea Upon Rejection of Recommendation.** If the plea agreement includes a recommendation of the type specified in subdivision (a)(3) or (a)(4), and if the court at the time of sentencing intends to enter a disposition less favorable to the defendant than that recommended, the court shall on the record inform the parties of this intention, advise the defendant personally in open court that the court is not bound by the recommendation, advise the defendant that, if the defendant does not withdraw the defendant's plea of guilty or nolo contendere the disposition of the case will be less favorable to the defendant than that recommended, and afford the defendant the opportunity to withdraw the defendant's plea. The court will, if possible, inform the defendant of the intended disposition.

M.R.Crim. P. 11A(d), (e).

[¶ 15] There are two questions before us: first, did the court err in refusing to allow Newbert to withdraw his plea; and second, did the court, in declining to delay the sentencing until after sentencing had occurred in the federal matter, effectively reject the plea agreement, thereby giving Newbert the absolute right to withdraw the plea.

[¶ 16] We first address Newbert's right to withdraw his pleas of guilty to the five counts pending in state court.

In general, a defendant does not have an absolute right to withdraw a guilty plea, and we review a court's decision to deny a motion to withdraw a plea for an abuse of discretion. *State v. Lambert,* 2001 ME 113, ¶¶ 4–5, 775 A.2d 1140, 1142. We do so primarily by addressing four factors: "(1) '[t]he length of time between entering the plea and seeking to withdraw it'; (2) '[t]he potential prejudice to the State'; (3) '[t]he defendant's assertions of innocence'; and (4) '[a]ny deficiency in the proceeding at which the defendant entered the plea in accordance with M.R.Crim. P. 11[A].'" *Id.* (quoting *State v. Hillman,* 2000 ME 71, ¶ 8, 749 A.2d 758, 761). We have held that a time period of three months between entering the plea and seeking to withdraw the plea, the State's difficulty in having witnesses testify after a withdrawal of the plea has been sought, and a lack of force in the defendant's assertion of innocence all weigh against the defendant. *Id.* ¶¶ 6–9, 14, 775 A.2d at 1142–43.

[¶ 17] We conclude that the court did not abuse its discretion in denying Newbert's motion to withdraw his plea where a full year had elapsed since entry of the plea, where the court found that the State's case would be severely prejudiced, and where Newbert's assertion of innocence came without explanation a year after he had pleaded guilty to the charges. We further note that Newbert received extraordinary flexibility from the sentencing court. He was allowed, time after time, to continue his sentencing, and at one point the court even contacted his federal attorney to discuss that case during a hearing. Indeed, the court had the authority throughout the proceedings to reject a plea agreement that would act to delay Newbert's sentencing. It did not. Rather, the court granted Newbert the opportunity to make arrangements that were advantageous to him. After the pas-

sage of almost two years since charges had been first filed, the constant rescheduling of the sentencing hearing, and Newbert's completed service of the originally intended sentence, the court did not err in declining to allow Newbert to withdraw his plea.[7]

▐ [¶ 18] Newbert next argues that the terms of his plea agreement required that the state court not sentence him *in advance* of the federal court sentence. Accordingly, he argues that the court, in sentencing him, effectively rejected his plea agreement, and therefore, he had an automatic right to withdraw his plea.

▐ [¶ 19] Plea agreements are interpreted under general contract principles, and the trial court's interpretation of a plea agreement is reviewed de novo. *State v. Murphy*, 2004 ME 118, ¶ 8, 861 A.2d 657, 661. Plea agreements are interpreted to give effect to the parties' intentions and are construed " 'with regard for the subject matter, motive, and purpose of the agreement, as well as the object to be accomplished.' "[8] *Id.* ¶ 9, 861 A.2d at 661 (quoting *Handy Boat Serv., Inc. v. Prof'l Servs., Inc.*, 1998 ME 134, ¶ 7, 711 A.2d 1306, 1308). We focus on the " 'meaning a reasonable person would have attached to the agreement at the time the agreement was entered into.' " *Id.* (quoting *State v. Antonio–Antimo*, 29 P.3d 298, 303 (Colo. 2000)). Plea agreements, however, receive greater scrutiny than commercial contracts because the defendant's fundamental rights are implicated, and the government

will bear responsibility for any lack of clarity. *Id.*

[¶ 20] On the facts before us, we conclude that the court did not reject Newbert's plea agreement. Although the record Newbert created does not detail the exact terms of the agreement, we conclude that the agreement contained the following terms: Newbert would receive a sentence of not more that sixty days for each of the five state crimes; the sentences would be served concurrently with each other; Newbert could be ordered to pay restitution (he was not); and Newbert would be sentenced "concurrently" with the federal sentence.

[¶ 21] It is the final component that has caused the dispute at hand. Because the state and federal courts are independent of each other and do not sit simultaneously, technically speaking, "concurrent sentencing" is not possible. The concepts incorporated in such a sentence agreement, however, can be reasonably understood to incorporate two goals: first, the defendant will not serve a greater amount of time in jail or prison as the result of the timing of the imposition of the separate sentences (the traditional understanding of concurrent sentences), and second, one sentence will not be enhanced by the existence or length of the other sentence.

[¶ 22] In the matter before us, both components were effectuated by the proceedings in the state court and therefore served to effectuate the parties' intentions. First, Newbert himself moved to revoke his state bail while he was otherwise incar-

---

7. Newbert's actions in the federal proceeding were similar to those in state court. He received numerous pretrial continuances, entered a plea, and ultimately withdrew his plea.

8. Similarly, the First Circuit has held that if a court accepts a plea agreement where the parties have agreed to a specific sentence

pursuant to FED. R. CRIM. P. 11, an expectation is created in the parties that the court will sentence the defendant according to the contractual terms of the agreement. *United States v. Moure–Ortiz*, 184 F.3d 1, 3–4 (1st Cir.1999) (interpreting former Rule 11(e)(1)(C), now found with substantive changes as Rule 11(c)(1)(C)).

cerated so that he would receive credit for the time he was serving. That goal was accomplished in full, and the time has in fact been served. No further delay of his sentence could change that fact.

[¶ 23] Second, Newbert indicated to the court that the state sentence, so long as it was less than sixty days, would not enhance or elongate his federal sentence. Thus, when the court imposed a sentence of fifty-nine days, concurrent on all state charges, the intent of the entire plea agreement was effectuated.[9]

[¶ 24] To the extent that Newbert argues otherwise, any error by the court was harmless. Maine Rule of Criminal Procedure 52(a) governs harmless error in criminal proceedings: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."[10] Newbert's state court sentence has in fact been served, and that fact cannot now be altered.

The entry is:

Judgment and sentence affirmed.

9. To the extent that Newbert may have been incorrect in his assertion that a state sentence of less than sixty days would not prejudice his federal sentence, he has not filed a motion pursuant to M.R.Crim. P. 35 to correct or reduce his sentence.

10. Although we have not had occasion to determine whether Rule 52(a) applies in Rule 11A proceedings, we note that the federal courts do apply the harmless error rule in FED. R. CRIM. P. 52(a) to plea agreement proceedings. FED. R. CRIM. P. 11(h); FED. R. CRIM. P. 11 notes of advisory committee on 1983 amendments. When evaluating violations of FED. R. CRIM. P. 11, the First Circuit focuses on "the reality of events as reflected by the record and take[s] care not to elevate form over substance." *United States v. Cabrera–Rosario,* No. 97–1176, 1997 U.S.App. Lexis 28750, at *9 (1st Cir. Oct. 17, 1997).